## KRAUS v CLEVELAND (city)

Common Pleas Court, Cuyahoga Co

Decided July 2, 1938

Myron D. Malitz, Cleveland and William J. Kraus, Cleveland for plaintiff.

Alfred Clum, director of law, Cleveland, Henry S. Brainard, Cleveland, and Joseph H. Crowley, asst. director of law, Cleveland, for defendants.

## OPINION

By HURD, J.

This case comes before this court for final hearing upon the petition of the plaintiff for injunction and equitable relief.

The substance of the complaint of the plaintiff who brings the action as a taxpayer of the city of Cleveland on behalf of the city of Cleveland and on behalf of all taxpayers similarly situated, is that on the 11th day of March, 1938, there became effective an emergency ordinance of the City of Cleveland known as Ordinance No. 104,650-1 and being §§2925-1 to 2925-10 of the Municipal Code of the City of Cleveland, entitled "An Ordinance Relating to the Licensing of Mechanical Amusement Devices"; that the defendant, Joseph E. Cassidy, commissioner of assessments and licenses of the city of Cleveland, purporting to act under the provisions of said licensing ordinance has issued licenses for a large number of so-called mechanical amusement devices; that said license ordinance is void and illegal and that the expenditure of any public funds in connection with said ordinance is an improper diversion and misapplication of public funds of the municipality and an abuse of corporate power by the municipality; that the law director of the city of Cleveland has refused to bring this action although served with a written demand so to do; and that the plaintiff has no adequate remedy at law and therefore appeals to this court of equity under the provisions of the laws of Ohio and the charter of the City of Cleveland for equitable relief according to law.

It is claimed by the plaintiff that the said licensing ordinance of the city of Cleveland is clearly invalid in that it permits the licensing of mechanical amusement devices which are gambling devices per se, and that therefore the ordinance is clearly in conflict with §§13056 and 13066 GC which in general prohibit the exhibition of gambling devices for gain, and in contravention of Article 15, §6 of the Constitution of Ohio which forbids lotteries.

The joint answer of the defendants admits the enactment of the ordinance complained of, the refusal of the law director to bring this action, but denies that the ordinance is in conflict with the sections of the General Code of Ohio above referred to; admits that the defendant commissioner of assessments and licenses has issued approximately 3200 licenses for mechanical amusement devices as the same are defined by the ordinance, and that in doing so public money has been expended in the purchase of the necessary license forms, records, and matters incident to the proper and efficient enforcement of the provisions of said ordinance; and that the supplies purchased will service the operation of said ordinance for a period of approximately six months. Defendants thereupon by way of defense allege that the provisions of said ordinance specifically prohibit the giving of prizes or rewards for the operation of mechanical amusement devices defined in the ordinance, prohibit the redemption for cash, merchandise or other thing of value, or any evidence of result of operation of such machine, and specifically prohibit the playing of any machine except through the medium of a coin inserted therein, and al-

lege generally that the terms and provisions of said ordinance prohibit gambling on, by or through the mechanical amusement devices licensed under said ordinance.

Upon the hearing of the case, which was somewhat extended, there were admitted in evidence certain of the mechanical amusement devices complained of, and a demonstration of the operation of said devices was had in open court. The evidence and admissions of the parties during the course of the hearing developed certain facts which may briefly be summarized as follows:

The machines licensed are of the following kinds:

(a) An electrically actuated apparatus containing three to four externally visible disks. Each disk is divided into seven equal numbered segments. On top of each machine is a coin chute into which one to seven nickels may be inserted for each play. Upon insertion the number of nickels the player desires and selecting the number from one to seven which he desires to play, a lever is depressed actuating the segmented wheels. After an interval, the machine stops at one number, and if the player has selected the winning number, the machine vends from two to one hundred and forty tokens, depending upon the odds upon each wheel, and whether the winning number appears on more than one disk. The tokens vended by the machine are metal and the size of a nickel. They can be replayed into the machine, the same as nickels. The operation of the machine is purely fortuitous. The player has no control over its operation at any time, other than to press the lever which actuates the starting mechanism. No element of skill is involved. The machines do not vend gum, mints, or any other merchandise.

The tokens returned by the operation of the machine in open court have the following stamp on one side: "Property of machine" and in the center of the token the letter "K". On the other side, the following: "Good for one free game" and in the center the letter "K".

Another token has the following stamp: On one side, "property of machine," in the center the letter "W". On the reverse side, "Good for free game" and in the center the letter "W." (b) A small number of a variation of these machines have also been licensed by the Commissioner of Assessments and Licenses. These are commonly known as pin-ball machines, in which the player may insert from one to six nickels, and receive an award in the form of tokens depending on whether or not a ball actuated by a spring device falls into a hole num-

bered the same as that selected in advance by the player. The odds repaid to the player, if he wins, and the percentage retained by the machine are approximately the same as for the previously described devices. The element of skill involved in the playing of these machines, if any, is negligible.

According to the evidence seventy-five percent of the machines licensed by the city under the ordinance have the following common characteristics: They operate upon the insertion of one or more nickels. The machines vend tokens which can be replayed into the machine and are so designed for that purpose.

The sole inducement offered the player is the chance of winning an indeterminate number of slugs or tokens, depending upon a fortuitous selection by the player. While the claimed purpose of the machine is amusement only by replaying the tokens, it may be operated for financial gain or loss, particularly for financial gain if the player is fortunate enough to win tokens and if the tokens are redeemed for cash or merchandise.

The pertinent parts of the ordinance necessary for an understanding of this opinion, are as follows:

Sec 2925-1. "Definition. 'Mechanical amusement device,' for the purposes of this ordinance shall be held to mean any machine or device which, as a result of a deposit of a coin, by and through an automatic or mechanical operation, affords amusement, **whether, accompanied by the automatic or mechanical vending of, candies, confections, or other commodities, and which shall by means of such operation register a score or indicate the result of such operation, whether accompanied by the return of tokens, slugs, or any other evidence of the result of such operation or not."**
(Emphasis ours).

"Nothing in this ordinance contained shall be deemed to license or permit the operation of any device the operation of which shall have been held, or which may be held to be in conflict with the provisions of §13066 or any other section of the **General Code** or amendments thereto."

Sec 2925-2. "License required. No person, firm or corporation, either as owner, lessee or agent for another, shall keep, possess, use, exhibit, operate or permit to be kept, possessed, used, exhibited or operated any mechanical amusement device as defined in §2925-1 for gain, unless a license has

been first secured from the commissioner of assessments and licenses and the evidence thereof indicated on each such device in such manner as the commissioner of assessments and licenses shall prescribe. No evidence of license shall be placed upon any device unless such device shall first have been inspected and approved by the commissioner of assessments and licenses. No device upon which such evidence of license has been affixed shall be altered in any manner."

Sec 2925-3. "Rewards, prizes and redemption or replaying of tokens, slugs or other evidence of result of operation of devices prohibited. It shall be unlawful to offer or give rewards or prizes of any kind, based upon the score obtained or the result of operation of such device, **or to redeem for cash, merchandise, or other thing of value, any token, slug or other evidence of the result of operation of such device, or to replay, or permit to be replayed, such device by means of such token, slug or other evidence of the result of operation of such device.**" (Emphasis ours).

"Any device which the licensee or exhibitor, or the agent or employee thereof, knowingly permits to be used in violation of this section shall be subject to immediate seizure by any law enforcement officer of the city of Cleveland, and any person violating the provisions of this section shall, upon conviction thereof, be subject to the penalties hereinafter set forth."

Other sections of the ordinance provide for the method of application for license, the issuance of license, the revocation of license, appeal from the decision of the commissioner, penalties and prohibition of operation of devices by minors.

Upon an analysis of the issues involved and upon a careful review of all the evidence it would appear to this court that the question clearly presented is: Are the mechanical amusement devices sought to be licensed gambling devices **per se?**

If they are, the effort to license the same by whatever language employed must fail. If they are not gambling devices **per se,** they may then be the proper subject of regulation and license. In arriving at a conclusion upon the subject it is necessary to consider the law of Ohio with respect to a construction of §§13056 and **13066 GC** and the holdings of the courts with respect to what are or are not gambling devices **per se** coming within the prohibition of such statutes. It is then necessary to de-

termine whether or not the ordinance is or is not in conflict with these laws of Ohio respecting gambling devices and whether or not the said ordinance is on its face invalid as attempting to regulate and license something which the laws of Ohio do not permit to be licensed.

The case of **Snyder v The City of Alliance et al, 41 Oh St 48** (Motion to certify overruled in the Supreme Court, 124 Oh St 665) fourth and fifth syllabi thereof are as follows:

"4. Vending machine from which operator on depositing nickel receives mints and **from which he might receive tokens with which to play amusement feature thereof constituted gambling device;** hence injunction would not lie to prevent seizure thereof (§§13056 and 13066 GC). Black face ours.

"5. It is not essential to "gambling" that one should have a chance to lose, but that the player has lure to get something for nothing."

The definition of a gambling device is given in 12 R. C. L., page 726, as follows:

"A gambling device is an instrument or machine which permits one to play so he may win or lose money or other property of value or tangible thing with which the game on which money may be lost or won is played, as distinguished from the game itself."

Referring again to the case of Snyder v City of Alliance, **supra,** on page 54, the court say:

"Now, does a patron of this machine of continuous play receive something of value from the amusement device? This we answer in the affirmative; **for amusement is a thing of value, for which more money is spent perhaps than for any other purpose.** The appellant lays such stress on the fact that play of his device by the use of his tokens or checks but gives amusement to his patrons; but if this be the controlling factor, inducing continuous play, amusement is not furnished all patrons in the same quantity at the same cost; and therein lies the vicious element of one's obtaining something for nothing." (Black face ours.)

In the case of Mills Operating Company v Village of Toronto, 20 N. P. (N.S.) 525, the court said:

"Wherever the element of chance enters into the playing and the player has the

opportunity to receive something for nothing, something without consideration, it comes within the provision of the law prohibiting the operation of a gambling machine or device.

"It is the element of chance in the game that makes it illegal; whether one receives something or whether he receives nothing is not material.

"The gain may be either for himself, the defendant, or another who may be the owner of the machine."

In the case of the City of Akron v Stojenovic, 24 N. P. (N.S.), 479, the syllabus reads as follows:

"Whenever the element of chance is embodied in a device or machine, making it possible for a player to receive something for nothing, it comes within the provisions of an ordinance prohibiting the exhibiting of a gambling machine or device for gain; and the gambling feature is not eliminated by a provision whereby players receive some consideration for their money."

In the case of Snyder v McCure, 28 N. P. (N.S.) 506, the court said, at page 521:

"In conclusion, it is our opinion that the so-called baseball vending machine, in the case at bar was especially designed and constructed and is now, and was at the time the two machines were confiscated by the police, potentially a gambling device, notwithstanding the fact that the proof fails to show that checks were redeemed, for cash, or merchandise, marked Exhibits A and B, were located before their seizure by the police. We base our conclusions upon the fact that the plaintiff possessed the key to said machine and held the power, if he so desired, at any time to open said machine, or permit the proprietors where said machines were located to do so, and by a simple operation convert said machines into money paying machines which, upon the insertion of a five cent coin would, in addition to the vending of a package of mints upon each operation, from time to time deliver, upon the turning up of certain combinations, five cent coins, varying in number from two to twenty at times uncertain to the player. The mechanism of the machine is complex, and the operation by which the change results, when the cotter pin is removed, is very simple. If the machine in question is a mere vending device, as claimed by the plaintiffs, what would be the need for the complex mechanism and the vending of slugs or

tokens, which plaintiff claims are of no value, and which will not deliver mints upon their insertion in the machine."

In the case of **Gevaras v City of Cleveland, 8 O.O., 178,** a case arising in the city of Cleveland, decided by the Municipal Court of Cleveland, (Celebrezze, Judge, 1937) involving machines having precisely the same characteristics of operation as the machines involved in this case, the court said:

"This court is of the opinion, and the conclusion is irresistible, that these machines contain in and by themselves, each and every element of a gambling device as heretofore outlined.

"The court therefore finds these machines to be evil instruments, designed to circumvent the spirit and practice of the gambling laws. They are gambling devices **per se,** and as such the plaintiff has no property right therein. Therefore the plaintiff is not entitled to possession of the same."

In the case of **Myer v City of Cincinnati, 128 Oh St 235,** at page 237, the court say:

"Many recent decisions to the effect that slot vending machines of the general type involved in this case, which in return for coins deposited therein, dispense merchandise **accompanied at intervals by a varying number of checks or tokens** which may be used, either for obtaining additional amusement **by continuing the operation of the machine, are gambling devices.** 81 A. L. R. note beginning at page 73. 12 R. C. L. page 730. These decisions appear generally to be based on the theory that devices of this kind encourage and stimulate the gambling instinct of receiving something for nothing, or more for less, and are in such contravention of sound public policy as to come within the laws relating to gambling and the exhibition of gambling devises." (Emphasis ours).

So far as we can learn this is the latest pronouncement of the Supreme Court of Ohio on this subject and the conclusion is inevitable upon an analysis of this opinion that any machine which returns or distributes one or more tokens or slugs or disks by means of which additional merchandise or additional amusement may be obtained by replaying the machine therewith, is a gambling device **per se.**

It would appear from an examination of the ordinance in question that the same was

drafted with a view to bringing the same within the purview of the opinion of the Supreme Court in an earlier case, namely, State v Krause, 114 Oh St 342, decided in 1926. We are of the opinion that the cases of Snyder v City of Alliance, 41 Oh Ap supra, decided June 16, 1931, and the case of Myer v City of Cincinnati, 128 Oh St, supra, decided April 11, 1934, are more pertinent to the issues presented in the instant case, which is a proceeding in equity than the case of State v Krause, 114 Oh St, supra, which was a criminal case requiring the application of well known principles applicable to criminal cases.

On page 350 of the case of State v Krause, supra, the court say:

"Until a record is presented which shows consecutive plays, or consecutive alternate play, as a result of which premium checks, or coupons are received, which secure to the player or players something for nothing as a result of his play, we fail to see how there can be a violation of the statute."

On page 346, quoting from 12 R. C. L., 730, the court say:

"It is generally held that a slot vending machine, which in return for a coin deposited therein, dispenses merchandise of the value of such coin, accompanied at occasional and uncertain intervals by a varying amount of money, trade checks, or coupons, is a gambling device.

"Nor is such a machine rendered innocuous by the fact that it indicates in advance of each deposit exactly what it will dispense; it being considered that in such instances, the player gambles, not on the immediate return for the coin he deposits but on the hope or chance that the indicator will show a profit on the next play."

Considering all of the factors presented in the Krause case and analyzing and construing the same with other cases decided by the Court of Appeals and the Supreme Court, notably the cases of Snyder v City of Alliance, 41 Oh Ap, supra, and Myer v City of Cincinnati, 128 Oh St, supra, we come to the conclusion that even though the Krause case is a criminal case, yet it is authority for the proposition that a machine which emits tokens, disks, which may be replayed in the machine is a gambling device and in violation of the laws of the state of Ohio.

Our conclusion, based upon the rationale, authority and logic of all of the cases decided by the courts of the state of Ohio, which appear to be in harmony with the decisions of the courts of many other states, is that a machine which emits tokens or disks, which may be replayed, or which may be redeemed for cash or merchandise, is a gambling device per se and in violation of the laws of the state of Ohio.

We reach the conclusion, therefore, on the evidence before us, that at least 75 per cent of the 3,200 machines which have been licensed under this ordinance are gambling devices per se.

This court, in the light of decisions of the courts of record of this state must hold that the city is without authority to license said machines, and that the ordinance insofar as it attempts to license a gambling device per se is invalid, being in conflict with the laws of the state of Ohio, particularly §§13056 and 13056 GC, with relation to the use and exhibition of gambling devices for gain.

Considering now the ordinance in question and analyzing the same in the light of the law of Ohio as interpreted by our courts of last resort, we find fatal defects inherent in the ordinance itself, which incline us to the opinion that the ordinance is invalid on its face. We have particular reference to §2925-1, containing the definition of "mechanical amusement device" and particularly that part of the ordinance, containing the words "any machine or device, which as a result of a deposit of a coin, by and through an automatic or mechanical operation, affords amusement, whether accompanied by the automatic vending of any mints, candies, confections, or other commodities, and which shall by means of such operation register a score or indicate the results of such operations, whether accompanied by the return of tokens, slugs or any other evidence of the result of such operation or not.

This definition clearly comes within the prohibition of our laws concerning the exhibition of a gambling device for gain, and includes within its terms a gambling device per se such as is in evidence in this case, and when construed together with other provisions of the ordinance is tantamount to saying, in effect, whether, a machine is a gambling device per se, or not, nevertheless we shall license it. The gambling device in question in this case, held to be a gambling device per se, registers the score or indicates the result of any such operation. It returns tokens or slugs which according to the legend on the token is good for another free game, so that clearly on the face of the ordinance the city is at-

tempting to license a gambling device per se. It is true that there is an attempt to cure this definition by the clause in the same paragraph which provides that nothing in the ordinance shall be deemed to license or permit the operation of any device, the operation of which shall have been held or which may be held to be in conflict with the provisions of §13066, or any other section of the GC of Ohio. This is a contradiction in terms apparent on the face of the ordinance. A machine which returns tokens or slugs which may be replayed is a gambling device per se and has so been held to be in violation of the provisions of §13066 and other sections of the Code. Council certainly has not the authority to license such machines and they are not removing the objection to their authority by stating that such action on their part shall not be in conflict with the law, when as a matter of fact it is in conflict with law. It is in conflict with the law and saying that it shall not be so does not change the fact.

Further, in §2925-8, Council make an apparent attempt to cure the objection by stating that the "slugs or disks shall not be replayed." This simply does not make sense. What does Council think shall be done with all the slugs and tokens (from 2 to as high as 140 in one operation), which are returned by these machines if they are not replayed or redeemed? Human nature being what it is we know that these tokens will be replayed or redeemed. Figuratively speaking council, as a legislative body must have winked the legislative eye, when it inserted this clause in the ordinance.

Also an apparent attempt is made by ordinance to prohibit the use of these machines by minors. If these devices are as innocent and innocuous as the proponents of the ordinance would have us believe such restrictions would be unnecessary, and whether necessary or not, practical common sense tells us that with these machines placed in various stores, restaurants, confectionaries, cigar stores, candy stores, etc., they will be used by minors. Council may say that all this relates to enforcement and of course so it does, and we advert to it only as showing the known and obvious practical impossibility of doing what the city claims it is attempting to do by this ordinance. The same proposition applies to the tokens emitted or ejected by the machine. It is obvious that if it was worth five cents to play the machine in the first or subsequent plays the right to replay the machine with tokens won by any such play, at least for the purpose of replaying the machine, is of the same monetary value as the original cost of the play. It follows, therefore, that one player may receive or obtain something of value which another player may not. That tokens received from a machine which permit the player to replay the same is something of value, is recognized in the case of Snyder v City of Alliance, supra, which we have quoted at some length. The ordinance when analyzed in the light of existing decisions of our courts and the laws with respect to gambling, particularly §§13056 and 13066 GC, is clearly on its face, in conflict with the laws of Ohio with respect to the exhibition of gambling devices for gain.

Counsel for defense have argued both orally and by way of brief that the ordinance in and of itself is not in conflict with the laws of Ohio.

We hold that the ordinance is on its face in direct conflict with the laws of Ohio, and we hold that the licensing which the city is attempting to do under the ordinance is also clearly in conflict with the laws of Ohio, and we hold, therefore, that the expenditure of public funds thereunder is an unlawful and ultra vires act, which should be enjoined.

Counsel for defendants point to the opinion of this court in the case of Samuel Son v Eliot Ness, et al., in which a wholly different situation was presented. No licensing ordinance was in existence and the "police department was making a valiant but apparently unsuccessful effort to curb the use of machines for gambling purposes." In that case this court did not pass upon the question of whether or not the devices were in fact gambling devices because this question was not before the court in that case. This court was then asked to enjoin the officers of the city of Cleveland from confiscating machines, the very type and kind in evidence in this case, in that they emitted tokens or slugs which might be replayed. This court in that case held that a court of Equity should not "hamper the law officers in any way or impede their activity in the performance of their duty." And, "that the judgment of the court should not be substituted for the judgment of the administrative officials." At that time this court stated, "it is so well settled that the judicial branch of the government will not substitute its judgment for the judgment of the administrative or executive branch of the government that the citation of authorities on the subject would be superfluous." Counsel then argues that such a statement should apply with equal or greater force to

the legislative branch of the government in this particular case. We wish to point out that this court is not substituting its judgment for the judgment of the legislative branch of the government by its decision in this case. The court is holding in this case that the judgment of the legislative branch of the government as expressed in this ordinance is in conflict with the laws of the state of Ohio with relation to gambling. This court is fully aware and deeply conscious of the fundamental proposition of law that a legislative enactment by the state of Ohio which is claimed to be contrary to the constitution should not be lightly set aside. And we believe that this same proposition applies with equal force to a legislative enactment of the city of Cleveland which is claimed to be contrary or in conflict with the general law, of the state of Ohio. It is not the province of the court to consider any questions of policy with respect to this or any other legislation of the city of Cleveland, claimed to contravene the laws of Ohio. The people in their wisdom have adopted a constitution providing for three separate and distinct divisions of governmental functions, the executive, the legislative and the judicial. Each separate branch is supreme in its own sphere of activity, subservient only to the will of the people as expressed in the constitution and the laws thereunder. While each branch of government must be independent in the exercise of its own functions and prerogatives each must likewise respect the rights, functions and prerogatives of the other branches of government. Therefore, when there is a question such as is here presented before the court for final determination it is not the duty of the court to question the wisdom of the legislation but to determine if it is in conformity with the provisions of the laws of the state. If it is so in conformity the legislation must stand. If it contravenes or is in conflict with existing laws of Ohio the legislation must fail and the laws of the state of Ohio prevail. Furthermore, it must be clearly in conflict or in contravention of the State law to authorize the courts to intervene and overthrow the act of the legislative body. It is for the reason that the legislation in question appears to us to be clearly in violation of the general laws of the state of Ohio on the exhibition of gambling devices for gain both on the face of the ordinance itself and on the evidence before us as to what has been attempted to be done under the ordinance by way of licensing gambling devices per se that the court is obliged to hold the ordinance invalid—and the ex-

penditure of public funds to service or enforce the same to be unlawful.

Since the trial of this suit and the submission of original briefs the plaintiff has presented for the consideration of the court a new list of cases which the plaintiff claims is authority for the proposition that the enactment in question is in violation of the Ohio constitution. Art 15, §6, provides that "lotteries and the sale of lottery tickets for any purpose whatever shall be forever prohibited in this state."

It is claimed that courts of sister states with similar constitutional provisions have held that slot machines or mechanical amusement devices which return tokens are in fact lotteries, and therefore in violation of the constitution.

In view of the court's holdings as above announced that the legislation in question is contrary to general laws on the subject of gambling, we believe that it is unnecessary to consider the question of constitutionality. This opinion and decision is confined to a consideration of the question of conflict between the municipal ordinance and the things attempted to be done and general state law. The court holds, therefore, that the city charter does not give to the city of Cleveland powers in contravention of the laws of the state of Ohio, and that where the laws of the City of Cleveland conflict with the laws of the state of Ohio, the latter must prevail. As the court views the situation, the city of Cleveland, even though it has a Home Rule Charter, must abide by the laws of the state of Ohio as well as any other municipality in the state.

Entertaining these views, therefore, the injunction will be granted as prayed for and a journal entry may be prepared accordingly.