WESTERHAUS, INC., Plaintiff-Appellee, v. CINCINNATI (City) et, Defendant-Appellants.

Ohio Appeals, First District, Hamilton County.

No. 7822.   Decided June 17, 1955.

Robert N. Gorman, Loyal S. Martin, Cincinnati, Don C. Miller, Cleveland, for plaintiff-appellee.

Henry M. Bruestle, City Solicitor, James W. Farrell, Asst. City Solicitor, Wallace M. Power, Asst. City Solicitor, Cincinnati, for defendant-appellants.

(KOVACHY, PJ, SKEEL, J, HURD, J, of Eighth District sitting by designation in the First District.)

## OPINION

By HURD, J:

This is an action in equity here appealed on questions of law and fact from a judgment of the Common Pleas Court of Hamilton County, whereby plaintiff, Westerhaus, Inc., a licensed pinball distributor, sought and obtained a permanent injunction prohibiting defendants, City of Cincinnati and its officials, from:

"1. Seizing and confiscating the licensed amusement devices of this plaintiff;

"2. Confiscating and destroying the licensed amusement devices of plaintiff by means other than the orders or directions of a court of law;

"3. Refusing licenses and/or permits to this plaintiff for the distribution and exhibition of its amusement devices upon proper application thereto;

"4. Revoking or cancelling the licenses or permits of plaintiff and/or the licenses or permits of exhibitors using the equipment of this plaintiff by means other than the order or direction of a court of law."

The plaintiff filed his petition February 27, 1951, alleging in substance that it was engaged in the lawful business, leasing, renting and exhibiting pinball machines in Cincinnati and that it registered with the City and obtained licenses as a distributor in conformity with Sec. 731.22 of the Code of Ordinances of the City; that it owned a number of pinball machines which were located with various exhibitors who also were registered and licensed in accordance with the terms of said ordinances; that the city, through its officers, was about to revoke licenses for numerous and various of these amusement devices, commonly known as "Pinball Machines"; of "great property value to the plaintiff." Broadly stated, it is the claim of plaintiff as set forth in its petition that the city was contemplating action which would, in effect, be a violation of plaintiff's rights under the ordinance of the city relating to the operation, exhibition and distribution of amusement devices which the city claimed were in violation of the city ordinances and likewise in violation of the statutes of Ohio relating to gambling and/or gaming.

The defendants, after denying each and every allegation contained in the petition, except those specifically admitted to be true, averred in part as follows:

"Answering further, defendants say that the distribution and exhibition of pinball machines in the City of Cincinnati is governed by the provisions of Chapter 731 of the Code of Ordinances of the City of Cincinnati and that Section 731-9 of said chapter provides:

'It shall be unlawful for any exhibitor or other person to exhibit, operate or have in his possession a pinball machine which is so constructed as to make possible, either directly or by use of an adjustment, the return of cash, tickets, discs, or other tokens or certificates of any kind, to a player operating the same whether or not such tokens or certificates have a value of any kind or authorize further playing or other privileges. Only machines operated exclusively for the amusement provided by the operation thereof shall be licensed.'

"That section 731-11 of said chapter provides: 'It shall be unlawful for any person, firm or corporation to maintain or exhibit a pinball machine on any premises situated less than three hundred (300) feet from the building and grounds of any elementary school or high school, said three hundred (300) feet being measured along the line of the nearest curb.'

"That section 731-12 of said chapter provides: 'It shall be unlawful for any exhibitor of one or more pinball machines to permit the same to be played or used by a person under twenty-one (21) years of age.'

"That Section 731-21 of said chapter provides: 'Should any distributor or exhibitor violate or fail to comply with any of the provisions of this chapter it shall be the duty of the city treasurer to revoke his

license. In case of the revocation of an exhibitor's license, the licenses of all machines operated by him, or on his premises, shall be revoked and such machines removed from the premises within twenty-four (24) hours thereafter.

'A distributor or exhibitor whose license has been revoked shall not be eligible to apply for or receive a new license within the period of one (1) year after the revocation.'

"That Section 731-23 of said chapter provides: 'If any pinball machine is used as a gambling device, or is otherwise operated contrary to the provisions of the laws of the State of Ohio, or of this chapter, such machine may, in the discretion of the city manager, be seized and destroyed as in the case of gaming devices.' Answering further, defendants say that the provisions of Chapter 731 of the Code of Ordinances of the City of Cincinnati are valid and constitutional, **that it is the duty of the defendants to enforce said provisions and that pinball machines belonging to plaintiff are being operated as gambling devices contrary to the ordinances of the City of Cincinnati and the laws of the State of Ohio.**" (Emphasis added.)

The allegations of the petition and the averments of the answer present an issue as to whether certain pinball machines owned and distributed by the plaintiff are gambling devices per se and as such, subject to seizure by the city.

The parties failing to agree or stipulate as to the evidence presented upon the trial in Common Pleas Court, this Court appointed C. R. Beirne a Special Master Commissioner directing him to take evidence and to submit to this Court his findings of fact and conclusions of law. Thereafter the parties appeared before the Special Master Commissioner and presented evidence which was reduced to writing as set forth in three volumes filed in these proceedings. Following the presentation of the evidence, the Special Master Commissioner submitted his findings of fact and conclusions of law in writing, which, with the evidence, is now before us for review and determination on the motion of the city to conform the findings of fact and conclusions of law, the exceptions of the plaintiff thereto, and the motion of plaintiff to strike the report on the ground that the case is not properly appealable.

An examination of the findings of fact which are set forth at length in the report of the Special Master Commissioner, indicate an exhaustive and a painstaking review of the evidence by him with a careful and detailed analysis of the operation of two pinball machines denominated respectively as the "Bally Beach Club" machine (defendants' Ex. No. 1) and the "Skill Pool" machine (defendants' Exh. No. 13) both subjects of this action. The findings of fact are so extensive and in such detail that we think any discussion here would be unduly repetitious. In his conclsions of law, the Special Master Commissioner holds that these two machines, owned and distributed by the plaintiff, are gambling devices within the meaning of §§2915.04 and 2915.15 R. C. and lotteries under Art. IV, Sec. 6 of the Constitution and that such machines could be seized and destroyed by the provisions of Sec. 731-23 and 737-1 of the Code of Ordinances of the City of Cincinnati and that the injunction of the Common Pleas Court should be dissolved and judgment entered

356

for the defendants. We think that it may be helpful to set forth these conclusions of law verbatim as follows:

"1. The Skill Pool Machine, plaintiff's exhibit 13, and Bingo Bally Beach Club machine, defendant's exhibit 1, constitute 'gambling device or machine' within the meaning of §2915.15 R. C., and the operation of such machines constitutes a 'game to be played for gain' within the meaning of §2915.04 R. C., because both of such machines are predominantly controlled by the element of chance.

"2. The right acquired in operating such machines, to replay without the insertion of an additional coin, upon attaining a score determined by the manufacturer or distributor, constitutes 'gain' or 'other property' within the meaning of §2915.04 R. C., and §2915.15 R. C.

"3. Both of said machines, plaintiff's exhibit 13 and defendants' exhibit 1, are designed to be operated contrary to the provisions of the laws of Ohio within the meaning of Sec. 731-23 and are designed to be used for the purpose of gambling within the meaning of Sec. 737-1 of the Ordinances of the City of Cincinnati and where such machines are distributed by the plaintiff and are exhibited in public places, they may be seized and destroyed pursuant to the provisions of each of said ordinances.

"4. Both of said machines constitute lotteries within the meaning of **Art. XV, Sec. 6** of the **Ohio Constitution.**

"5. Sec. 731-23 and Sec. 737-1 of the Code of Ordinances of the City of Cincinnati are valid and constitutional.

"6. The plaintiff is not entitled to an injunction restraining the defendant from seizing and confiscating devices of the kind received in evidence in the present case, plaintiff's exhibit 13 and defendants' exhibit 1, and the injunction heretofore issued should be dissolved and a judgment entered in favor of the defendants.

"7. The defendants may not confiscate any machines which the plaintiff may own, nor revoke the plaintiff's license as a distributor, on the sole ground that such machines afford the right of free play. However, this conclusion (7) has no application to the types of machines considered in the evidence in the present case; namely, plaintiff's exhibit 13, or defendants' exhibit 1."

It appears that following the presentation of the testimony to the Special Master Commissioner, the plaintiff appellee for the first time raised the question as to whether this appeal was properly taken on questions of law and fact by filing a motion to dismiss the appeal, upon consideration whereof the Court, composed of the members of the First Appellate District, overruled the motion to dismiss the appeal and retained the case for trial de novo on questions of law and fact. The same motion has again been presented upon this hearing on the merits.

We are of the opinion that the primary relief here sought is in chancery and we see no reason to reverse the previous ruling of this court, as in our opinion a strange anomaly would be presented if plaintiff after invoking the equitable jurisdiction of the trial court and having obtained the equitable relief sought, could on motion prevent this Court from considering and determining the issues here presented as a chancery case on questions of law and fact.

We are of the opinion that in principle the case of **Kraus v. City of Cleveland, 135 Oh St 43, 19 N. E.** 2d, 159, decided February 1, 1939, wherein the judgment of the Court of Appeals was reversed and the judgment of the Common Pleas Court affirmed. (See **12 O.O. 206** and 2 Ohio Supp. 87) is decisive of the issues in this case, even though we recognize the existence of certain factual differences between that case and the instant case.

In the Kraus case, the machines or devices were operated in such a manner as to return or emit tokens, slugs or discs by means of which additional merchandise or additional amusement could be obtained by replaying the machine. In that case, the Supreme Court struck down an ordinance purporting to license the distribution and operation of such machines as being in conflict with §§13056 and **13066 GC** (now §§**2915.04** and **2915.15 R. C.**). In this connection we call particular attention to the following excerpt from the report of the Special Master Commissioner commencing at page 36, wherein it is stated:

"The decision of the court in the Kraus case is controlling on the question of whether or not the right to play the machine constitutes 'gain' 'or other things of value' or 'other property' within the meaning of the above quoted statutes. As to this feature of the case, the only distinction between the Kraus case and the present case is that the right to replay the game in the Kraus case was dependent upon receiving a token from the machine when the established score was reached, whereas in the present case the right to replay is established automatically without a token. The distinction is immaterial. The Kraus case was not decided upon this fine distinction of mechanics, but upon the principle that the **right** to replay the game constituted amusement and that **amusement** was a thing of value. "Certainly the token which was merely the mechanical means by which the machine could be replayed, was of no inherent value in itself. The right to amusement afforded by the machine considered in the Kraus case is indistinguishable from the right to amusement afforded by both of the machines considered in the present case. The absence of any real distinction between the type of machine considered in the Kraus case and the types considered in the present case has been recognized by the Supreme Court of other states, who have followed the Kraus case, in decisions which involve machines where the right to replay was determined automatically. In each of the following cases the court cited the Kraus case and followed it: Baedaro v. Caldwell, 156 Neb. 489, 56 N. W. 2d 706 Sup. Ct. Neb. 1953; State v. Wiley et, 232 Iowa, 443, 3 N. W. 2d 620 Sup. Ct. Iowa 1942; Middlemas v. Strutz, Atty. General, 71 N. Dak. 186, 299 N. W. 589, Sup. Ct. N. Dak. 1941; Steely v. Commonwealth, 291 Ky 554, 164 S. W. 2d 977; Giomi v. Chase, 47 N. Mex. 22, 132 Pac. 2d 715 Sup. Ct. N. Mex. 1942."

We are in complete accord with and approve the foregoing statement. We have heretofore pointed to another distinction between the two cases which should perhaps be emphasized. In the Kraus case, the ordinance of the City of Cleveland purporting to license and legalize gambling devices per se was an issue, whereas in the instant case, the ordinance of the City of Cincinnati which provides for the operation and licensing of machines exclusively for amusement is not subject to attack.

In the instant case, the city and its officials are seeking to maintain the right under its ordinance to prevent plaintiff under a claim of right from exhibiting and distributing gambling machines which are asserted by the city to be gambling devices per se, in violation of law.

We think the facts in this case in relation to the machines in question disclose the three elements of gambling, namely, chance, prize and price interdicted by the Supreme Court in the Kraus case where at page 47 the Court declares:

"Since amusement has value, and added amusement has additional value, and since it is subject to be procured by chance without the payment of additional consideration therefor, there is involved in the game three elements of gambling, namely, chance, price and a prize."

Upon consideration of the evidence, the findings of fact and conclusions of law of the Special Master Commissioner, the arguments and briefs of counsel, we are of the opinion that the particular pinball machines here considered are gambling devices per se, distributed, operated and exhibited in violation of law. We are further of the opinion that under such circumstances the city has not only the right but the duty, acting through its proper officials, to take such action as it deems appropriate according to law to prevent the plaintiff from unlawful practices.

Holding these views, we conclude that the exceptions of the plaintiff to the report of the Special Master Commissioner are not well taken and should be overruled; that the motion of the plaintiff to strike the report should also be overruled, and that the report of the Special Master Commissioner should be confirmed and adopted by this Court and a decree entered for the defendants, City of Cincinnati, dissolving the injunction hereinbefore entered for plaintiff and that final judgment should be rendered for the defendants appellants.

A journal entry may be drawn accordingly with exceptions noted.

KOVACHY, PJ, SKEEL, J, concur.

No. 7822. Decided July 22, 1955.

(KOVACHY, PJ, SKEEL, J, HURD, J, of the Eighth District sitting by designation in the First Appellate District.)

## MOTION FOR REHEARING OR CERTIFICATION
### OPINION

By HURD, J:

Since our decision in the instant case, rendered June 17, 1955, plaintiff-appellee has filed a motion for rehearing or in the alternative, for an order certifying the record in this case to the Supreme Court on the ground that the judgment herein is in conflict with the cases of **Brafford v. Calhoun, 72 Oh Ap 333** and **State v. Simonian, 77 Oh Ap 201.**

Plaintiff-appellee complains of the seventh conclusion of law which reads as follows:

"7. The defendant may not confiscate any machines which the plaintiff may own nor revoke the plaintiff's license as a distributor, on the sole ground that such machines afford the right of free play. However, this conclusion (7) has no application to the types of machines considered in the evidence in the present case; namely, plaintiff's exhibit 13, or defendant's exhibit 1."

The plaintiff appellee is hardly in a position to complain of this finding because obviously it is in its favor inasmuch as the Court, in approving the findings of fact and conclusions of law of the Special Master Commissioner, held that the Skill Pool Machine, Plaintiff's Exhibit 13, and the Bingo Bally Beach Club Machine, Defendant's Exhibit 1, constituted gambling devices or machines by reason of which the City of Cincinnati, et al, defendants-appellants, should not be enjoined from taking action according to law to prevent the plaintiff from a continuation of unlawful practices with relation to said two types of machines. We are in accord with the statement contained in the brief of the City Solicitor as follows:

"Plaintiff-appellee's application for a rehearing seemingly is based on the grounds that the court did not, but should have, decided whether all pinball machines are gambling devices and whether the pinball machines in evidence in the case would be gambling devices if the free play element were removed. Obviously, the court can pass only on questions which are raised by the record and neither of these questions were raised by the record. The court could only pass upon the pinball machines which were actually introduced into evidence and state a general principle of law, which it did, that any pinball machine which gives a chance for a prize for a price is a gambling device. Since the undisputed testimony in the case was that all the pinball machines owned by plaintiff-appellee operated with a free play device, the court obviously could not in

this case pass upon the question of whether such machines would be gambling devices if the free play element was eliminated."

The plaintiff-appellee further argues that a rehearing should be granted "because the court failed to take into consideration the modification of the Statutes since the decision in **Kraus v. City of Cleveland, 135 Oh St 43."**

This statement is not correct. It is true that we did not discuss the amendments of September 18, 1951, in our memorandum opinion of June 17, 1955. However, these amendments were discussed in the findings of fact and conclusions of law of the Special Master Commissioner which we confirmed. That should be sufficient.

Furthermore, the amendments of September 18, 1951, enlarged or broadened the scope of the applicable laws with respect to exhibiting. owning, possessing or transporting gambling devices for gain. That is why we stated that the case of Kraus v. City of Cleveland, supra, **in principle,** supports the principles of law here presented even though we recognized the existence of certain factual differencs between the two cases.

It is clear, we think, that it was the intention of the Legislature in enacting new §13066-1 GC (§2915.16 R. C.), defining the term gambling device as used in §§13066-2 and 13066-3 GC (§§2915.17 and 2915.18 R. C.) and "other than as defined in §§13063-3 and 13063-4 GC" (§§2915.10 and 2915.12 R. C.) to make the laws with respect to gambling devices all inclusive. It cannot be assumed that the Legislature intended to do a vain thing by adopting amendments to existing laws prohibiting the manufacture, use and exhibition of gambling devices for gain and at the same time enacted legislations excepting gambling devices from such prohibition, nor can such amendments be construed as a limitation on constitutional prohibitions against gambling.

In relation to this proposition, the Legislature may have had in mind the substance of the oft quoted excerpt from the case of Moberly v. Deskin (1913) 169 Mo. Ap. 672, 155 SW 842, which is particularly apropos:

"In no field of reprehensible endeavor has the ingenuity of man been more exerted than in the invention of devices to comply with the letter but to do violence to the spirit and thwart the benficient objects and purposes of the laws designed to suppress the vice of gambling. Be it said to the credit of the expounders of the law that such fruits of inventive genius have been allowed by the courts to accomplish no greater result than that of demonstrating the inaccuracy and insufficiency of some of the old definitions of gambling that were made before the advent of the era of greatly expanded, diversified, and cunning mechanical inventions."

Coming now to a consideration of the cases which are asserted to be. in conflict with our decision, namely, State v. Simonian, supra, and Brafford v. Calhoun, supra, while there may be some slight analogy, we do not find these cases, on the facts and the law, to be directly in conflict with our decision in the instant case. However, we find it unnecessary to discuss this question for the reason that these decisions were rendered by the Court of Appeals of the First Appellate District.

Inasmuch as our decision in this case was rendered while sitting by designation in the First Appellate District, the provisions of **Section 6, Art. 4** of the **Constitution,** requiring certification to the Supreme Court on the ground of conflict, have no application here. The constitutional provisions requiring certification on the ground of conflict have application only where a judgment of the Court of Appeals of one district establishes a rule of law contrary to the rule of law established by the Court of Appeals of another district.

Holding these views, we conclude that the application for rehearing should be overruled and the motion to certify on the ground of conflict should likewise be overruled.

Entry accordingly. Exceptions given.

KOVACHY, PJ, SKEEL, J, concur.