**STATE, Plaintiff, v. SMITH, Defendant.**

Common Pleas Court, Summit County.

No. 29434. Decided March 7, 1960.

C. C. Lipps, for defendant.
John S. Ballard, Pros. Atty., for the State.

**OPINION**

By WATTERS, J.

The defendant, Ralph Brown Smith, was indicted in the September Term 1959, by the Grand Jury of Summit County, Ohio, for "Possession of Gambling Devices" under §2915.16 and 2915.17 R. C., respectively, in two (2) counts, as follows, in substance, leaving out the pre formal verbage:

"DO FIND AND PRESENT, that Ralph Brown Smith in the County

of Summit and State of Ohio aforesaid, on the 4th day of December, in the year of our Lord, one thousand, nine hundred and fifty-nine, unlawfully did own or possess gambling devices, to-wit: Machines or mechanical devices designed and manufactured to operate by means of insertion of a coin so that when operated they may deliver as the result of the application of an element of chance, money, property, or other things of value, contrary to the form of the statute in such case made and provided and against the peace and dignity of the State of Ohio."

## "SECOND COUNT"

"And the Grand Jurors of the State of Ohio, within and for the body of the County of Summit aforesaid, on their oaths and by the authority of the State of Ohio, DO FURTHER FIND AND PRESENT that RALPH BROWN SMITH, in the County of Summit and State of Ohio, on the 4th day of December A. D. 1959, unlawfully did own or possess gambling devices, to-wit: Subassemblies or essential parts intended to be used in connection with machines or mechanical devices designed and manufactured to operate by means of insertion of a coin so that when operated they may deliver as the result of the application of an element of chance, money, property, or other things of value, contrary to the form of the statute in such case made and provided and against the peace and dignity of the State of Ohio."

"A TRUE BILL."

The defendant moved for and the court sustained said motion for a bill of particulars, and the State furnished the following bill of particulars, ordered by journal entry filed February 3rd, 1960. "Bill of Particulars Filed February 4, 1960 (caption omitted)."

"Pursuant to the Court's order filed herein on February 3, 1960, in which order the Prosecuting Attorney was required to furnish the Defendant with a Bill of Particulars in which the Prosecuting Attorney must specifically describe the general type and number of the devices alleged in the indictment, the means by which such devices may be operated recited in detail beyond the allegations in the indictment, and by specifying what the things of value are that would be produced from playing said devices, the Prosecuting Attorney says:

"1. **The General Type and Number**

"(a) Fifteen bottoms and sixteen tops of bingo-type pinball machines.

"(b) Two Evans' Saddle and Turf Horse-racing Machines.

"(c) One Kentucky Derby Horse-racing Machine.

"(d) One Keeney's Delux 'Big Tent' coin operated Slot Machine.

"2. **The Means by Which Such Devices May be Operated**

"(a) **Bingo-type pinball machines.**

"All these machines are coin operated. With the insertion of the coin, the player gets five balls. The player utilizes a plunger to propel the metal balls onto the face of the machine which has numerous holes through which the ball may drop. On the upright portion of the machine are numbered circles in series similar to a bingo card. If the balls drop through three or more holes in the same series as are indicated upon the upright portion of the machine, the player wins free games.

"The number of free games the player wins depends upon the odds indicated at the time the coin is dropped into the machine. The player can endeavor to increase the odds by the insertion of additional coins into the machine. By the insertion of additional coins the odds may or may not increase.

"(b) **Evans' Saddle and Turf Horse-racing Machine.**

"These machines are coin operated; the coin required is twenty-five cents. Across the front of the machine are located a series of seven buttons, each corresponding to seven circles located upon the upright portion of the machine. The player, upon dropping one or more quarters into the machine, punches one or more of the seven buttons aligned across the front of the machine. This establishes which number or numbers the operator is playing. Then the player punches a button located on the front of the machine which causes an arm to commence rotating underneath the top of the machine. Painted on the top of the machine is a large circle which is cut into numerous pie-shaped sections bearing numbers from one to seven. These numbers correspond to the seven numbered circles located on the upright portion of the machine. The rotating arm revolves for approximately thirty seconds and comes to rest beneath one of the pie-shaped sections of the large circle described above. If the number of this particular section is the same as the number of the button the player punched before starting the play, the player wins free games. The number of free games the player wins is determined by the odds which are painted on the outside of the seven circles located on the upright portion of these machines.

"(c) **Kentucky Derby Horse-racing Machine.**

"This machine is operated by the insertion of a quarter. On the face of the machine is a large circle which is divided into sections bearing numbers from one to seven. On the top of the machine is a row of seven buttons numbered one to seven. The player punches one or more of said buttons and then punches a button located at the top of the machine. This causes an arm to rotate beneath the face of the machine. The arm rotates for approximately thirty seconds and comes to rest beneath one of the numbers in the circle located on the face of the machine. If the arm comes to rest underneath a number the operator punched, he wins free games. The number of free games is determined by the score or odds indicated on the scoreboard which is located on the face of the machine.

"(d) **Keeney's Delux 'Big Tent' coin operated Slot Machine.**

"This machine is operated by the insertion of a quarter in the slot provided. On the face of the machine are painted pictures of various animals to indicate the winning combinations, such as three elephants, or two elephants and a lion or a monkey, and etc. Next there are columns of numbers indicating the score or free games the player wins if he gets the animals in the correct combination as indicated.

"On the lower portion of the face of the machine are three rows of pictures of these same animals. The player drops a quarter or quarters into the machine. A lever is located on the front of the machine. After dropping his quarter in the machine, the player moves this lever in

either clock-wise or counter clock-wise direction until the machine stops, at which time a light is lit behind one of the animals in each of the three columns described above. This determines the combination of animals resulting from his play. If the player gets one of the combinations pictured on the upper left part of the face of the machine, he wins the number of free plays indicated in the column of figures located to the right of the combination.

"3. **Specify What things of Value Would be Produced from Playing Said Devices.**

"All of the devices produce free games if the operator of the device records a certain score."

"(Signed)   John S. Ballard
_____
John S. Ballard
Prosecuting Attorney."

Thereafter, defendant's counsel on February 8th, 1960, filed a demurrer on behalf of the defendant, as follows:

"Now comes the defendant and demurs to the indictment supplemented by the Bill of Particulars for the reason that the same does not state an offense punishable under the laws of Ohio."

Thereafter, counsel for the defendant and the State filed their briefs for and against the demurrer, respectively, and the court took the matter under advisement for decision.

The court will now discuss various criminal statutes of Ohio from their origin, which are directly or indirectly involved in or applicable to the questions before the court, together with certain Ohio court rulings that this court believes applicable.

In the 1948 Baldwin Code, §§13066 GC, appears, in substance, as follows:

"**Exhibiting gambling device for gain.**"

"Whoever keeps or exhibits for gain or to win or gain money or other property - - - - - a gambling device or machine . . . . . shall be fined not less than $50.00 .nor more than $500.00, and imprisoned not less than ten days nor more than ninety days, and shall give security in the sum of $500.00 for his good behavior for one year."

In 1951, effective September 18, 1951, the statute was amended to read, in substance, as pertinent here:

"Exhibiting gambling device for gain—Exceptions:"

"Whoever keeps or exhibits for gain or to win or gain money or, other property . . . . ., or gambling device or machine, **other than is defined in §§13066-1, 13063 and 13064 GC**, . . . . shall be fined not less than fifty dollars nor more than $500.00, and imprisoned not less than ten days nor more than ninety days, and shall give security . . . . etc." (Same penalty as above.)

(This section is now §2915.15 R. C., in substance, though not in form.)

It will be noted that said statute as amended reads, "other than is defined in §13066-1 GC, which was newly passed at the same time and also effective September 18, 1951.

The other sections excepted, along with said §13066-1 GC, were §13063 and 13064 GC, which became effective September 21, 1943 and pertained

to **lottery offenses** and are now §2915.10 and 2915.12 **R. C.**, without any substantial change.

The court will now discuss a Supreme Court case under original §13066 GC, before it was amended in 1951, for its historical value.

In the January Term 1951, to-wit, on October 24, 1951, the Supreme Court of Ohio decided:

**State v. Shaffer, 156 Oh St 153**—the facts show that the defendant was charged with unlawfully keeping and exhibiting for gain, on **September 22, 1949,** a certain gambling device commonly known as a **slot machine**; a "one-armed bandit," as the court labeled it.

The court says, the indictment was drawn under §13066 GC (73 **Ohio Laws**) as then in force, before amendment, and quotes in substance said statute.

By "then in force," the court means, of course, at the date of the offense, to-wit, September 22, 1949, and not the date of its decision, October 24, 1951.

The statute, §13066 GC, then was as originally quoted by this court at the outset hereof, **before any amendment thereof effective September 18, 1951,** which excepted §§13066-1, 13063 and 13064 GC. In fact, although §§13063 and 13064 GC (covering lotteries) were then effective, new §13066-1 GC, was not effective in 1949 when the offense occurred, said **new §13066-1 GC**, not being effective until September 18, 1951, as aforesaid.

As the court said, the machine was a slot machine, "a one-armed bandit," where you put in a nickle, dime, quarter or half dollar, and the machine operated automatically when you pulled down the "arm" or lever, and you usually get nothing, or various money coins back up to the jack-pot, if lucky, according to how it works, but nobody knows; it goes round and round, and where it stops is dependent purely on **chance. No skill at all is involved.** If you win, actual money coins are spilled out or delivered by the machine.

Said machine, in the Supreme Court case, was exhibited and ready for business in the defendant's place of business, and the court reversed the court of appeals and sustained the common pleas court's guilty finding, under original §13066 GC, the only statute then, at the time of the offense, applicable.

**Judge Middleton** dissented, on the grounds that the State had failed to produce any evidence that the machine was "kept or exhibited for gain." In any event, §13066 GC, then, and as amended September 18, 1951, and even now (§2915.15 **R. C.**), are titled "Exhibiting Gambling Devices for Gain."

In the year 1951, the legislature, by urging of the press, the governor, and public opinion, as said before, effective September 18, 1951, amended §13066 GC, and created §§13066-1, 13066-2, 13066-3 and 13066-4 GC, all effective September 18, 1951, said new sections being directly aimed at the slot machine type of machine before the court in **156 Oh St 153, supra,** which operated as discussed above, and **which involved no skill and only chance,** and if you won, actually **delivered** coins or money in various amounts to the player out of the machine.

The court will now set forth the present R. C. sections which indicate

the present law and which indicate the former sections of the General Code from which they are derived. These sections of the Revised Code are the same as the former General Code sections in substance, but the form or wording is changed without material change in the substance.

"Sec. 2915.15 R. C.—Exhibiting gambling devices for gain." (Sec. 13066 GC.)

"No person shall keep or exhibit for gain or to win money or other property, a gambling table, or faro or keno bank, or a gambling device or machine, **other than as is defined in §§2915.10, 2915.12 and 2915.16 R. C.**, or keep or exhibit a billiard table for the purpose of gambling or allow it to be so used. Whoever violates this section shall be fined not less than fifty nor more than five hundred dollars and imprisoned not less than ten nor more than ninety days, and shall give security in the sum of five hundred dollars against further violation of this section for one year."

"Sec. 2915.16 R. C.—Definition of gambling device. (Sec. 13066-1 GC.)" As used in §§2915.17 and 2915.18 R. C., 'gambling device' means:

"(A) Any slot machine or any other machine or mechanical device, other than as is defined in §§2915.10 and 2915.12 R. C., an essential part of which is a drum or reel with insignia thereon which when operated may deliver, as the result of an element of chance, any money, property, or other thing of value or by the operation of which a person may become entitled to receive, as the result of the application of an element of chance, any money, property, or other thing of value;

"(B) Any machine or mechanical device, other than as is defined in §§2915.10 and 2915.12 R. C., designed and manufactured to operate by means of insertion of a coin, token, or similar object so that when operated it may deliver as the result of the application of an element of chance, any money, property, or other thing of value;

"(C) Any subassembly or essential part intended to be used in connection with any such machine or mechanical device."

The §§2915.10 and 2915.12 R. C., excepted above are the so-called anti-lottery sections. (Emphasis by this court.)

"Sec. 2915.17 R. C.—Penalty for owning, possessing, or exhibiting gambling devices. (Sec. 13066-2 GC.)"

"No person shall own, possess, or exhibit any gambling device, other than as is defined in §§2915.10 and 2915.12 R. C. This section does not prohibit the possession of a gambling device during the act of and for the sole purpose of transportation except as provided by §2915.18 R. C.

"Whoever violates this section shall be fined not more than five thousand dollars and imprisoned for not less than one nor more than five years."

"Sec. 2915.18 R. C.—Penalty for transporting gambling devices. (Sec. 13066-3 GC.)"

"No person shall knowingly transport any gambling device, other than as is defined in §§2915.10 and 2915.12 R. C., for delivery within this state.

"Whoever violates this section shall be fined not more than five thousand dollars and imprisoned for not less than one nor more than five years."

This latter section which comes from §§13066-3 and 13066-4 GC, both passed in 1951, and effective September 18, 1951, is not at all pertinent here, except that it is referred to in the preceding §2915.17 R. C.

The case of **Westerhaus Company, Inc. v. City of Cincinnati et al, 165 Oh St 327,** decided June 6, 1956, was commenced in the common pleas court of Hamilton County, September 27, 1951, **about nine days after the effective date of amended §13066 GC** (September 18, 1951), and after the same effective date of newly created §§13066-1, 13066-2, 13066-3 and 13066-4 GC, which later became §§2915.15, 2915.16, 2915.17 and 2915.18 R. C., as they are now in effect, in substance though not in form.

The action was to enjoin the City from interference with the claimed lawful business of the plaintiff, Westerhaus Company, including selling, leasing, renting, operating, or exhibiting of pinball machines in said City, and involved the interpretation of certain ordinances passed and in effect in Cincinnati.

The facts alleged and the relief sought by way of injunction and by way of a declaratory judgment are fully set forth on pages 328, 329, 330, 331 and 332, and in the various syllabi of the court.

The trial court ruled with the plaintiff and granted full injunctive relief. The court of appeals ruled contra, and dismissed the plaintiff's petition. The supreme court allowed certification due to various claimed court of appeals conflicts (see top of page 332). The supreme court sustained the court of appeals (see later herein).

The court also quoted from the court of appeals finding that said machine came under §13056 GC, now §2915.04 R. C., also a misdemeanor.

The type of machines around which the controversy mainly waged, was the so-called "Skill Pool" pinball machine which is better set forth in syllabus number 12. (Also see court's opinion, Judge Taft, pages 334, 335 and 336.)

Syllabus 12: "Where it is necessary . . ." etc. (See later as set forth from the opinion of the court, in substance on the above pages, and hereinafter.)

See also Syllabi (4), (5), (6), (7), (10) and (11).

See also the last paragraph of the opinion on page 337:

"Plaintiff further argues that the 'Skill Pool' type of machine does not come within the definition of a 'gambling device' found in §13066-1 GC (now §2915.16 R. C.). This section was first enacted in 1951 (effective September 18, 1951). At the time of its enactment and in the same act, §13066 GC, was amended so as to add therein, after the words 'a gambling device or machine,' **the words other than defined in §§13066-1, 13063** and **13064 GC.** Thus, although the definition of 'gambling device' as contained in §13066-1 GC, may be so restricted as not to cover the 'Skill Pool' type of machine, §13066 GC, as amended, at the same time as the enactment of §13066-1 GC, clearly indicates that the General Assembly did not intend to restrict the term 'gambling device' as found in §13066 GC, **except to the extent of making §13066 GC, inapplicable to the type of 'gambling device or machine' described in §13066-1 GC.**" (Emphasis by this court.)

The court (Judge Taft) then ended its opinion commencing with the bottom paragraph on pages 339 to 340 as follows:

"Thus, even though operating the 'Skill Pool' machine so as to get an opportunity to replay it free may be dependent on skill, its operation will not certainly result in such opportunity of a free replay and, therefore, such opportunity constitutes 'gambling' and such a machine is a 'gamblnig device or machine' within the meaning of §13066 GC." (Emphasis by this court.)

"It follows that the judgment of the court of appeals must be sustained."

See also page 637 of 25 O. Jur. 2nd, 24, Pinball Machines (citing 165 Oh St 327, Westerhaus Company v. City of Cincinnati supra):

"However, it is now settled by the Supreme Court that a pinball machine permitting the operator thereof a replay without further payment if he obtains a sufficient score is a gambling machine or device per se within the meaning of §2915.15 R. C. (§13066 GC). (Emphasis by this court.)

It will be noted that the Supreme Court specifically found in its final conclusion and in the syllabus (12) that the type of machine before it, the so-called pinball "Skill Pool" machine, was a gambling device per se under §13066 GC (as amended effective September 18, 1951) and now and at the time of its decision (June 6, 1956) known as §2915.15 R. C.

The court also found in its opinion, and this cannot be considered mere dictum, as the court discussed and referred to then effective §13066-1 GC (now in substance though not in the exact form §2915.16 R. C.) as follows, as stated above in full, "Clearly indicates that the General Assembly did not intend to restrict the term 'gambling device' as found in §13066 GC, except to the extent of making §13066 GC, inapplicable to the type of 'gambling device or machine' described in §13066-1 GC." (Emphasis by this court.)

In other words, the only fair and reasonable interpretation is that the pinball type of machine before the Supreme Court would come within the misdemeanor section, §13066 GC (now §2915.15 R. C.), and not as described in §13066-1 GC (now §2915.16 R. C.).

If the court intended otherwise, it would and should have so found.

At this point, it will be interesting next to examine this Westerhaus case in the Court of Appeals of Hamilton County, Westerhaus, Inc. v. City of Cincinnati, 71 Abs 353, wherein the Cuyahoga County Court of Appeals sat in place of the Hamilton County Court.

"Syllabus (3); A pinball machine which automatically gives the right to a free play upon the obtaining a certain score by the player is a gambling device per se, and the distribution or operation thereof constitutes a violation of law."

Ohio Constitution, Article 4, Section 6, Article 15, etc. and §§2915.04 and 2915.15 R. C. (The last sections were §§13056 and 13066 GC, as amended. The constitutional sections have to do with lotteries.) Emphasis by this court.

(Also the syllabus cites §2515.15 R. C., in error, and means §2915.15 R. C., obviously.)

It will be noted the court did not put said violation under §§2915.16

or 2915.17 R. C., the felony statutes; nor did the Supreme Court in affirming the Court of Appeals.

(See §2915.04 R. C., formerly §13056 GC, mentioned above.) This section is headed, in substance, **"Permitting gaming upon device for gain . . ."** etc. This statute is likewise a misdemeanor, and of no real pertinence to the case at bar.

In the Supreme Court case of **Benjamin v. Columbus, 167 Oh St 103,** approved and followed **165 Oh St 327, Westerhaus, Inc. v. City of Cincinnati.**

In the latter case **(165 Oh St 327)**, cited on **page 334** from the court of appeals finding of law, as follows:

"In its conclusions of law, the court of appeals held that each of these types of machines **(Skill Pool and Bally Beach Club)** (emphasized words added), constitute (a) gambling device or machine within **§2915.15 R. C.,** formerly §13066 GC . . . . . and §2915.04 R. C."

Further, on **page 338** of **165 Oh St 327** the court, in referring to the case of Kraus v. Cleveland (next to the last paragraph) said:

"However, no such problem **(use of skill)** (added by this court) was before the court in that case, as the ordinance there involved dealt with machines in which 'the automatic or mechanical operation of the device, without the intervention of the skill of the player' determined the result of the game."

This shows, in this court's opinion, that the pinball type machine, where skill is commingled with chance, and thus obtaining a certain score allowing a further play—a free play—though a gambling device, is considered a much less vicious type than those involving no requisite skill, and thus comes under §2915.15 R. C.

This is borne out by the fact that in **25 O. Jur. 2nd §24, page 635,** where the Westerhaus case is cited under "pinball machine," and whereas the Kraus case and Shaffer case, supra, are cited in **§22 page 633 of 25 O. Jur. 2nd, page 633,** under "Slot machines."

## CONCLUSION

In the court's opinion, each and all of the various types of machines as described in detail in the bill of particulars supplemental to the indictment are the so-called pinball type of device, of the same or similar nature, as the "Skill Pool" type or "Bally Beach Club" type before the court in the **Westerhaus Case, 71 Abs 353** (court of appeals) and in **165 Oh St 327.**

The operator, in order to get a sufficient score, or what not, in order to get the right to a free play, must exercise his skill and ability, which is combined also with a large degree of chance, as a result of which combination of skill and chance the player can or may be entitled to replay the machine free. Such right is not **delivered** automatically, and entirely by chance alone, as where the money is spilled out in the "one-armed bandit" slot machine; but the right to replay may be gained by said combination of skill and chance.

As the court said in **165 Oh St** at **page 338** (about the middle), "Also, in our opinion, the mere fact, that the determination as to whether an operator will get a sufficient score to be entitled to replay the machine

free, may be dependent on the skill of the operator, does not require the conclusion that such machine is not a gambling device or machine."

In its finding of fact, the court of appeals in the Westerhaus case found said type of machine to be the pinball type and a gambling game or device under §2915.04 R. C. and §2915.15 R. C., and the Supreme Court affirmed and specifically indicated in syllabus number (12), and as discussed hereinbefore fully, that the violation came under §2915.15 R. C., the misdemeanor section.

Accordingly, this court holds that the various machines involved and described in the Bill of Particulars are gambling devices per se, but are such under §2915.15 R. C., only, and not under §2915.16 or §2915.17 R. C., the sections under which the indictment is admittedly drawn.

The indictment is not drawn under §2915.15 or §2915.04 R. C., and is not intended to be.

Further, the court having found from the description of said machines as aforesaid in the Bill of Particulars, that said type of machines do not come within §2915.16 and/or §2915.17 R. C. The indictment does not state an offense thereunder.

The demurrer will, therefore, be sustained, with exceptions to the State.